IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| Joseph Clark, On Behalf of Himself and All Others Similarly Situated,<br><br>                Plaintiff,<br><br>vs.<br><br><br><br>Harrah's NC Casino Company, LLC, d/b/a Harrah's Cherokee Casino Resort and d/b/a Harrah's Cherokee Valley River Casino and Hotel,<br><br>                Defendants. | Civil Action No: **1:17-cv-240**<br><br>**COLLECTIVE/CLASS ACTION COMPLAINT** |

## CLASS ACTION COMPLAINT

1. Plaintiff, on behalf of himself and all similarly situated individuals, brings this collective and class action against Defendant Harrah's NC Casino Company, d/b/a Harrah's Cherokee Casino Resort and d/b/a Harrah's Cherokee Valley River Casino and Hotel ("Harrah's" or "Defendant"), for unpaid wages, overtime compensation and statutory penalties due to its willful failure to compensate gaming floor employees with proper pay in violation of the federal Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the North Carolina Wage and Hour Act ("NCWHA") N.C. Gen. Stat §§ 95-25.1 *et seq*. In support of the claims stated above, Plaintiff alleges the following:

### INTRODUCTION

2. This case implicates the longstanding policy of Harrah's, which fails to properly compensate non-exempt gaming floor employees for work performed. As used in this Complaint, the term "gaming floor employees" includes individuals employed in the positions of

"table games dealer," "dual rate dealer," and "floor supervisor," as well as any similarly titled position.

3. Employers are not required to pay employees for meal periods if the meal period is completely uninterrupted. However, Harrah's automatically deducts 30 minutes from each shift worked by its gaming floor employees, despite the fact that it does not allow gaming floor employees a 30-minute uninterrupted meal break as a matter of policy and practice.

4. Harrah's willfully, deliberately, and voluntarily failed to pay Plaintiff and other similarly situated gaming floor employees all overtime compensation in violation of the FLSA by requiring them to perform work during their meal breaks, but subjecting them to an automatic 30-minute meal break deduction.

5. Harrah's willfully, deliberately, and voluntarily failed to pay Plaintiff and similarly situated gaming floor employees all promised and earned wages on their regular pay day for all hours worked in violation of the NCWHA by requiring them to perform work during their meal breaks, but subjecting them to an automatic 30-minute meal break deduction.

6. Harrah's required gaming floor employees to report to work 30-minutes prior to the start of their scheduled shifts, without compensation, which included attendance at a mandatory pre-shift meeting.

7. Harrah's willfully, deliberately, and voluntarily failed to pay Plaintiff and other similarly situated gaming floor employees all overtime compensation in violation of the FLSA by requiring them to perform work during without pay during the 30-minutes preceding the start of their scheduled shifts.

8. Harrah's willfully, deliberately, and voluntarily failed to pay Plaintiff and similarly situated gaming floor employees all promised and earned wages on their regular pay

day for all hours worked in violation of the NCWHA by requiring them to perform work during without pay during the 30-minutes preceding the start of their scheduled shifts.

## COVERAGE ALLEGATIONS

9. At all times hereinafter mentioned, Harrah's has been an employer and/or joint employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

10. Harrah's operates an Internet website where it advertises for available positions at both North Carolina casino locations, including the gaming floor employee positions at issue in this lawsuit.

11. Harrah's, directly or indirectly, controls, directs and supervises gaming floor employees.

12. Harrah's provides onsite management and human resources to both North Carolina casino locations and maintains the ability to hire, fire, and change the terms and conditions of employment for gaming floor employees.

13. Harrah's relationship with the North Carolina casinos is not temporary.

14. Harrah's exercises common control over both North Carolina casino locations.

15. All work performed by gaming floor employees at issue in this case is performed at Harrah's North Carolina casino locations.

16. Harrah's provides the expertise, support and training necessary for gaming floor employees to perform their work.

17. At all times hereinafter mentioned, Harrah's has been an enterprise within the meaning of Section 3(r) of the FLSA 29 U.S.C. § 203(r).

18. At all times hereinafter mentioned, Harrah's has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of

the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

19. At all times hereinafter mentioned, Plaintiff has been an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

20. At all times hereinafter mentioned, Plaintiff was an individual employee and was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

21. At all times hereinafter mentioned, Harrah's has been an employer within the meaning of Section 95-25.2(5) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(5).

22. At all times hereinafter mentioned, Plaintiff was an employee within the meaning of Section 95-25.2(4) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(4).

## PARTIES

23. Plaintiff Clark is a natural person and currently a resident of Georgia. Clark was a resident of North Carolina during 2014 and 2015. Clark was employed at Harrah's Cherokee Casino Resort from July 28, 2014 through September 29, 2015 and at Harrah's Cherokee Valley River Casino from October 2015 through January 18, 2017. Clark has worked in the positions of table games dealer, dual rate dealer and floor supervisor. Attached as Exhibit A is Clark's "Consent to Become a Party Plaintiff Form."

24. Harrah's NC Casino Company, LLC is a North Carolina corporation with its principal office located at One Caesars Palace Drive, Las Vegas, Nevada. Harrah's operates two casinos in North Carolina, which are Harrah's Cherokee Casino Resort, located in Cherokee, North Carolina and Harrah's Cherokee Valley River Casino and Hotel, located in Murphy, North Carolina.

## JURISDICTION

25. This Court has jurisdiction over this matter pursuant to 28 U.S.C. 28 U.S.C. § 1337 (commerce), 28 U.S.C. § 1331 (federal question), 29 U.S.C. § 216(b) (FLSA), and 28 U.S.C. § 1367 (supplemental jurisdiction).

26. This Court has personal jurisdiction over Defendants and venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## FACTS

27. Despite the FLSA's requirement for employees to be paid for all hours worked, Harrah's has a uniform payroll policy of automatically deducting 30 minutes per shift worked for a so-called meal break for Plaintiff and similarly situated gaming floor employees, even though these workers are not afforded a 30 minute uninterrupted meal break.

28. This policy applies to all hourly, non-exempt gaming floor employees, including Plaintiff.

29. Under Harrah's policy, gaming floor employees are told to take the so-called meal break at some point during their shift by a floor supervisor, who has knowledge of the so-called meal break for each gaming floor employee he/she supervises.

30. Harrah's does not require gaming floor employees to clock in at the beginning or end of the so-called meal period. Rather, Harrah's automatically deducts 30 minutes per shift

- 5 -
Case 1:17-cv-00240-MR-DLH     Document 1     Filed 08/31/17     Page 5 of 15

worked for gaming floor employees. This is the default time tracking rule for the Plaintiff and the class members he seeks to represent.

31. As a matter of policy and practice, Harrah's does not allow gaming floor employees to take a 30 minute uninterrupted meal break.

32. As a matter of policy and practice, Harrah's requires gaming floor employees to return to their gaming station at least ten minutes before the end of their meal break.

33. The gaming floor is approximately a five minute walk from the nearest employee break area, which means that gaming floor employees spend at least ten minutes of their meal period going to and returning from the only place available to them to eat.

34. Even though Harrah's is aware that it is not allowing gaming floor employees to take anything close to a 30 minute meal period, it nevertheless deducts a full 30 minute meal period from their pay for each shift worked.

35. Despite the FLSA's requirement for employees to be paid for all hours worked, Harrah's has a uniform policy and practice of requiring Plaintiff and similarly situated gaming floor employees to report to work 30-minutes prior to the start of their scheduled shifts, without pay, which includes attendance at a mandatory pre-shift meeting.

36. This policy applies to all hourly, non-exempt gaming floor employees, including Plaintiff.

## COLLECTIVE ACTION ALLEGATIONS

37. Plaintiff brings this action as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b).

38. Plaintiff brings this action on behalf of all Harrah's current and former table games dealers, dual rate dealers, and floor supervisors employed at Harrah's North Carolina

casinos who were subject to: (1) Harrah's automatic meal deduction policy during the three years before this Complaint was filed up to the present and who elect to opt-in to this action and/or (2) Harrah's policy of requiring gaming floor employees to report to work 30-minutes prior to the start of their scheduled shift without pay ("the Collective Class").

39. The claims under the Fair Labor Standards Act may be pursued by those similarly situated employees who opt-in to this case pursuant to 29 U.S.C. § 216(b).

40. Plaintiff and the members of the Collective Class are similarly situated because they work or have worked for Defendant and were subject to the same uniform operational, compensation, and timekeeping policies and practices, including not being paid fully and accurately for all hours worked during the so-called meal period and/or before the start of their scheduled shifts.

41. All of the work that Plaintiff and the Collective Class have performed has been assigned by Defendant, and/or Defendant has been aware of all of the work that Plaintiff and Opt-in Plaintiffs have performed.

42. As part of its regular business practice, Defendant has intentionally, willfully and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the Collective Class. This policy and pattern and practice includes, but is not limited to, requiring Plaintiff and members of the Collective Class to work through their meal periods, but automatically deducting 30 minutes from each shift worked and requiring Plaintifs and members of the Collective Class to report to work 30-minutes prior to the start of their scheduled shifts without compensation for work performed.

43. Defendant was aware, or should have been aware, that federal law prohibits Defendant from automatically deducting 30 minutes from each shift worked by its gaming floor

employees when Defendant does not allow gaming floor employees a 30-minute uninterrupted meal break as a matter of policy and practice.

44. Defendant was aware, or should have been aware, that federal law prohibits Defendant from requiring gaming floor employees to perform work without pay, including requiring gaming floor employees to report to work 30-minutes prior to the start of their scheduled shifts and perform work without pay.

45. Plaintiff and the members of the Collective Class perform or performed the same basic job duties, were subject to the same employment policies, practices and procedures, and have been subject to the same unlawful practices alleged herein.

46. There are many similarly situated current and former gaming floor employees who have been denied overtime compensation in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. This notice should be sent to the Opt-in Plaintiffs pursuant to 29 U.S.C. § 216(b).

47. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

## CLASS ACTION ALLEGATIONS

48. Plaintiff also brings this action under Rule 23(b)(3), Fed.R.Civ.P., for back wages and liquidated damages under N.C.Gen.Stat. §§ 95-25.6, 95-25.7, 95-25.22, and 95-25.22(a1) ("NCWHA").

49. Plaintiff brings this NCWHA action on behalf of all Harrah's current and former gaming floor employees employed at Harrah's North Carolina casinos who were subject to Harrah's automatic meal deduction policy and/or Harrah's policy of requiring gaming floor

employees to report to work 30-minutes prior to the start of their scheduled shift without pay during the two years before this Complaint was filed up to the present ("the NCWHA Class").

50. This action is maintainable as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure pursuant to NCWHA, N.C. Gen. Stat. §§ 95-25.6 and 95-25.7, for failure to pay promised and earned wages for all hours worked by Plaintiff and the NCWHA Class.

51. The NCWHA Class is so numerous that the joinder of all such persons is impracticable and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Plaintiff at this time, upon information and belief, the class is comprised of at least 1000 persons.

52. There is a well-defined commonality of interest in the questions of law and fact involving and affecting the NCWHA Class in that Plaintiff and all members of the proposed class have been harmed by Defendant's failure to pay earned wages. The common questions of law and fact include, but are not limited to the following:

(a) whether Defendant failed to pay Plaintiff and members of the NCWHA Class promised and earned regular and overtime wages for all hours worked on their regular pay day in violation of NCWHA §§ 95-25.6 and 95-25.7;

(b) whether Defendant had a policy and/or practice of automatically deducting 30 minutes per shift worked for a so-called meal break for Plaintiff and the NCWHA Class, even though these workers are not afforded a 30 minute uninterrupted meal break;

(c) whether Defendant had a policy and/or practice of requiring Plaintiff and the NCWHA Class to report to work 30-minutes prior to the start of their scheduled shifts and perform work without compensation;

(d) whether Defendant had a policy and/or practice of requiring Plaintiff and the NCWHA Class to work off-the-clock; and

(e) whether Defendant's refusal to pay such compensation is in violation of NCWHA.

53. The claims of Plaintiff are typical of those claims that could be alleged by any NCWHA Class member and the relief sought is typical of the relief that would be sought by each member of the class in separate actions. All class members were subject to the same compensation practices of Defendant; i.e. refusing to timely pay all promised and earned wages on regular pay days as a result of Defendant's policy and practice of automatically deducting 30 minutes per shift from compensable time worked by Plaintiff and the NCWHA Class and requiring Plaintiff and the NCWHA Class to report to work 30-minutes prior to the start of their scheduled shifts. The compensation policies and practices of Defendant affected all class members similarly, and Defendant benefitted from the same type of unfair and/or wrongful acts as to each class member. Plaintiff and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

54. Plaintiff is able to fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and members of the proposed class. Plaintiff's interests in the claims are in no way antagonistic or adverse to those of other class members and the undersigned counsel are experienced litigators who have been named counsel for many class and collective actions.

55. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their

common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the loss, injuries, and damages suffered by each of the individual class members are modest, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them.

56. Important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for adjudication of individual litigation and claims would be substantial and substantially more than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for the Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

## COUNT I
### (Violation of the FLSA)

57. Plaintiff re-alleges and incorporates by reference the above allegations.

58. Plaintiff brings Count I on behalf of the Collective Class as defined above.

59. At all times relevant to this action, Defendant had a uniform policy and practice of willfully deducting 30 minutes from each shift worked by Plaintiff and the members of the Collective Class, despite the fact that Harrah's did not provide an uninterrupted 30 minute meal break.

60. At all times relevant to this action, Defendant had a uniform policy and practice of requiring gaming floor employees to report to work 30-minutes prior to the start of their scheduled shift without pay.

61. Defendant has violated and continues to violate the FLSA, 29 U.S.C. § 201, *et seq.*, by failing to pay Plaintiff and the Collective Class for all overtime hours worked in excess of forty in a workweek.

62. Defendant's conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

63. Defendant violated the FLSA by failing to keep, make and preserve accurate records of all time worked by Plaintiff and the Collective Class.

64. Due to Defendant's willful FLSA violations, Plaintiff, on behalf of himself and the members of the Collective Class, are entitled to recover from Defendant (1) compensation for unpaid wages; (2) an additional equal amount as liquidated damages; and (3) reasonable attorneys' fees and the costs of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT II

**(Violation of North Carolina Wage and Hour Act)**

65. Plaintiff re-alleges and incorporates by reference the above allegations.

66. Count II arises from Defendant's policy and practice of suffering or permitting Plaintiff and the NCWHA Class to work without paying promised and earned wages for all hours worked in violation of N.C. Gen. Stat. §§ 95-25.6 and 95-25.7.

67. Defendants violated N.C. Gen. Stat. §§ 95-25.6 and 95-25.7 by failing to pay Plaintiff and the NCWHA Class all promised wage and overtime payments on the employees' regular payday for all hours worked.

68. Defendant's violation of the NCWHA was willful.

69. Due to Defendant's willful NCWHA violations, Plaintiff, on behalf of himself and the members of the NCWHA Class, are entitled to recover from Defendant (1) compensation for unpaid wages; (2) an additional equal amount as liquidated damages; and (3) reasonable attorneys' fees and the costs of this action, pursuant to the NCWHA.

WHEREFORE, Plaintiff respectfully prays that this Court:

1. Enter an order finding that this Court has jurisdiction over Plaintiff's claims;

2. Certify this action as a collective action under 29 U.S.C. § 216(b) with respect to the Collective Class;

3. Certify this action as a class action under Rule 23(b)(3), Fed.R.Civ.P., for back wages and liquidated damages under N.C.G.S. § 95-25.22 with respect to the NCWHA Class;

4. Enter a judgment against Defendant Harrah's, and in favor of the named Plaintiff and the Collective Class, under Count I in an amount equal to the total of the unpaid wages due the named Plaintiff and the Collective Class under 29 U.S.C. § 206(a)(1), plus an equal amount as liquidated damages under 29 U.S.C. § 216(b);

5. Enter judgment against Defendant Harrah's, and in favor of the named Plaintiff and NCWHA Class, under Count II in an amount equal to the total of the unpaid wages due Plaintiff and the NCWHA Class of workers under N.C.G.S. §§ 95-25.22(a), plus an equal additional amount as liquidated damages under N.C.G.S. § 95-25.22(a)(1) plus interest in the manner and at the rate prescribed in N.C.G.S. § 95-25.22(a);

6. Award Plaintiff reasonable attorneys' fees and costs under 29 U.S.C. § 216(b), and N.C.G.S. § 95-25.22(d) against Defendant Harrah's;

7. Award Plaintiff and the Classes prejudgment and post judgment interest as allowed by law against Defendant Harrah's;

8. Enter a Declaration and finding by the Court that Defendant willfully violated provisions of the FLSA by failing to comply with the overtime requirements of the FLSA;

9. Enter a Declaration and finding by the Court that Defendant willfully violated provisions of the NCWHA by failing to comply with the overtime requirements of the NCWHA; and

10. Grant such other relief as the Court may deem just and proper.

Dated: August 31, 2017

Respectfully submitted,

/s/ Philip J. Gibbons, Jr.
Philip J. Gibbons, Jr., NCSB #50276
**STEPHAN ZOURAS, LLP**
15720 Brixham Hill Avenue Suite 331
Charlotte, NC 28277
Email: Pgibbons@stephanzouras.com


James B. Zouras
Andrew C. Ficzko
**STEPHAN ZOURAS, LLP**
205 N. Michigan Avenue, Suite 2560
Chicago, IL 60601
Email: Jzouras@stephanzouras.com
Email: Aficzko@stephanzouras.com


Jeffrey A. Leon
Zachary A. Jacobs
**QUANTUM LEGAL, LLC**
513 Central Avenue, Suite 300
Highland Park, IL 60035

                        Email: Jeff@QULegal.com
                        Email: Zachary@QULegal.com

*Attorneys for Plaintiff*