# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

| | |
|---|---|
| JOSEPH CLARK, individually and on behalf of all others similarly situated; <br><br> Plaintiff, <br><br> v. <br><br> HARRAH'S NC CASINO COMPANY, LLC, D/B/A HARRAHS' CHEROKEE CASINO RESORT AND D/B/A HARRAH'S CHEROKEE VALLEY RIVER CASINO AND HOTEL and BROOKS ROBINSON, <br><br> Defendants. | ) <br> ) <br> ) Civil No. 1:17-cv-00240-MR-DLH <br> ) <br> ) <br> ) **PLAINTIFF'S RESPONSE TO** <br> ) **DEFENDANTS' "LIMITED** <br> ) **OBJECTIONS' TO THE** <br> ) **MAGISTRATE JUDGE'S** <br> ) **MEMORANDUM AND** <br> ) **RECOMMENDATION** <br> ) |

Plaintiff Joseph Clark ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, submits Plaintiff's Response to Harrah's Limited Objection the Magistrate Judge's Report and Recommendation. For the reasons stated below, Harrah's objection should be rejected and the portion of the Magistrate Judge's R&R finding that Harrah's is not entitled to tribal sovereign immunity, and that Plaintiffs are not required to exhaust tribal remedies, should be adopted by this Court.

## I. INTRODUCTION

In this lawsuit, Plaintiffs have sued Harrah's NC Casino Company, LLC

("Harrah's") for violating the FLSA in its role of managing and operating Harrah's Cherokee Casino Resort and Harrah's Cherokee Valley River Casino and Hotel. Harrah's had the full power to hire and fire Plaintiffs and to set their compensation and employment policies pursuant to a management agreement with the Eastern Band of Cherokee Indians ("EBCI").[1]  In connection with Harrah's motion to dismiss the initial complaint, Harrah's argued it was not the employer of Plaintiffs. After the amended complaint cited to the management agreement which gave Harrah's unfettered authority to hire and fire and set employment policies, Harrah's motion to dismiss the Amended complaint abandons the argument that it is not Plaintiffs' employer.

Harrah's, which is Plaintiffs' employer for purposes of the FLSA, does not assert that it is an instrumentality of an Indian Tribe or that it is owned by an Indian Tribe.  Nonetheless, Harrah's seeks to cloak itself within potential sovereign rights of the EBCI which is not a party to this lawsuit and has asserted no rights or interests in this lawsuit.

As is discussed in more detail herein, the R&R concludes that Harrah's cannot claim the Tribe's sovereign immunity for itself because the Harrah's entity sued herein is a North Carolina limited liability company subject to federal and

---

[1] Harrah's cites to the management agreement throughout its brief, but did not include a copy.  Attached hereto is a copy of the management agreement between Harrah's and the EBCI.

state employment laws. No legal or factual basis exists to extend sovereign immunity to Harrah's. Similarly, Harrah's cannot invoke the tribal exhaustion doctrine under the circumstances of this case, nor can Harrah's establish that EBCI is a necessary party in this proceeding when Harrah's concedes it is an employer under the FLSA and in light of the fact that the FLSA makes Harrah's jointly and severally liable for any damages. The portions of the R&R that are the subject of Harrah's objection were correctly decided and should be adopted by this Court. As stated separately in Plaintiffs' Objection to the R&R. this Court should find that EBCI is not a necessary party and therefore, combined with adopting the portions of the R&R challenged by Harrah's, this Court should enter an order denying Harrah's Rule 12 motion in its entirety.

## II. FACTS RELEVANT TO THE MOTION.

This is a case brought against Defendant under the federal Fair Labor Standards Act and North Carolina's state wage payment law for employment policies and practices that have led to plaintiffs and the putative class being denied pay for time they spent on the job. Defendant is a North Carolina Limited Liability Company and is not asserted to be an instrumentality of an Indian Tribe. Defendant signed a contract to manage casinos owned by the Eastern Band of Cherokee Indians ("EBCI"). Pursuant to that management agreement, Harrah's was given "exclusive responsibility and authority to direct the election, hiring,

training, control and discharge of all employees" at Harrah's Cherokee Casino Resort and Harrah's Cherokee Valley River Casino. [Amended Complaint, ¶24]. Indeed, the management agreement explicitly states that all employees at Harrah's Cherokee Casino Resort and Harrah's Cherokee Valley River Casino are under Harrah's supervision. [Amended Complaint, ¶23] and that Harrah's maintains responsibility for drafting "personnel policies and procedures" for all Harrah's Cherokee Casino Resort and Harrah's Cherokee Valley River Casino employees. [Amended Complaint, ¶26].

Co-defendant Robinson is the General Manager of Harrah's Cherokee Casino Resort and Harrah's Cherokee Valley River Casino, and was responsible for the day-to-day operation of Harrah's Cherokee Casino Resort and Harrah's Cherokee Valley River Casino pursuant to the terms of the management agreement. [Amended Complaint, ¶27]

## III. ARGUMENT

### A. The R&R Correctly Concluded That The Tribe is Not The "Real Party in Interest", And it is In Any Event An Argument Harrah's Waived By Not Presenting it to the Magistrate Judge.

It goes without saying that the Magistrate Judge cannot err in rejecting an argument to which it was not presented. It is thus curious that Harrah's argues that "the magistrate judge erred in failing to find sovereign immunity bars the plaintiffs' claims because TCGE is 'the real party in interest'" [D.E. 54 at 7] given

that Harrah's never really made such an argument to the Magistrate Judge.[2]  Any comparison of Harrah's moving papers to the Magistrate and what it has now presented to this Court demonstrates that the argument Harrah's advances here is far different than what was made to the Magistrate.

Even so, Harrah's argument below was a curious one, in that Harrah's below spent pages arguing that EBCI, which is not a party to this case, is immune to suit due its status as a Tribe.  But EBCI is not a party, so this argument is *apropos* of nothing as Harrah's cannot obtain EBCI's immunity (which Plaintiffs accept for purposes of this motion only) through the transitive property, and the claims against Harrah's and its employee – the only defendants in this case – cannot be dismissed pursuant to Rule 12(b)(1) because this Court has subject matter jurisdiction over Harrah's, a privately owned LLC registered with the North Carolina Secretary of State that is not asserted to be owned by an Indian Tribe let alone owned by the EBCI.

---

[2] The words "real party in interest" appear just twice in the entirety of Harrah's briefing below, both times in its opening brief in two consecutive sentences, and only in a point heading entitled "Plaintiffs Claims Against Defendant Robinson Do Not Defeat Sovereign Immunity."  [D.E. 34 at 10]  Below Harrah's did not even argue that the Tribe was the real party in interest as concerns the claims ***against Harrah's***.  Nor did such an argument appear in the reply.  But all of the sudden, in its objection, the entire argument is predicated on *Harrah's being immune* because the Tribe is the purported real party in interest.

**1. This Court Has Federal Question Subject Matter Jurisdiction Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), and The Elements of a FLSA Claim are Not Jurisdictional and are Not Subject to Challenge Under FRCP 12(b)(1).**

While the R&R did not address the issue of whether Harrah's could properly proceed under Rule 12(b)(1), the fact that the elements of a FLSA are not jurisdictional means that this Court has subject matter jurisdiction – a fact which demands dismissal of Harrah's motion, which proceeds under Rule 12(b)(1). As such, this fact provides an independent basis to affirm the result of the R&R as concerns alleged derivative sovereign immunity.

This Court's subject-matter jurisdiction is provided by 28 U.S.C. § 1337 (as the Plaintiffs' claims involve interstate commerce), 28 U.S.C. § 1331 (subject jurisdiction when Plaintiffs' claim raises a federal question), and 29 U.S.C. § 216(b) (Plaintiffs' claim arises under the FLSA, a federal statute expressly providing for jurisdiction of the federal courts).[3] There plainly is subject matter jurisdiction.

Harrah's argues that 12(b)(1) dismissal is required because the Tribe is the "real" employer here. That is not the question under the FLSA, which merely asks whether the defendant is "an employer". The FLSA countenances the possibility of multiple statutory "employers", and there is no mandate that all must be sued – a

_____

[3] In addition to the federal question jurisdiction, Plaintiff's NCWHA claims provide the Court with supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because they arise from the same nucleus of facts of the FLSA federal claims.

point further underscored by the joint and several liability imposed by the FLSA. Harrah's argument is thus both legally and factually irrelevant to the question of subject matter jurisdiction.

The federal courts have repeatedly made clear that the issue of whether or not Harrah's is an "employer" as that term is given meaning under the FLSA is not a fact which in any way implicates this Court's subject-matter jurisdiction. Any doubt as to the inappropriateness of Harrah's seeking to proceed on a 12(b)(1) basis was put to rest in 2006 when the Supreme Court made clear, in connection with a case involving Title VII's requirement that an employer is only subject to suit if it employs 15 or more persons, that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character. Applying that readily administrable bright line to this case, we hold that the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 516 (2006).

Courts faced with similar 12(b)(1) challenges to the FLSA have not hesitated to apply *Arbaugh* and deny the motion. *See,e.g., Maravilla v. Ngoc Anh Restaurant Ltd.*, No. 1:16-cv-427 (LMB/MSN), 2016 WL 6821090 at *3 (E.D. Va., Nov. 17, 2016) (court applied *Arbaugh* and held that "'whether a defendant is an employer as defined in the FLSA is an element of the plaintiff's meritorious

FLSA claim' and...'does not implicate subject matter jurisdiction.'" because "the FLSA provides no indication that Congress intended the coverage requirements to operate as a jurisdictional bar" and noting that the "FLSA's definition of employer is found in the definitions section of the Act, [ ] the term is not jurisdictional.") (quoting *Gilbert v. Freshbikes*, LLC, 32 F.Supp.3d 594, 600 (D. Md. 2014)); *Bellows v. Darby Landscaping*, 2016 WL 264914 at *2 n.12 (D. Md. Jan. 21, 2016) ("the subject of Darby's motion—FLSA coverage—is an element of Bellows's FLSA claim; it *'is not* a jurisdictional issue.'") (quoting *Ramirez v. Amazing Home Contractors, Inc.,* No. CIV. JKB-14-2168, 2015 WL 4282130, at *4 & n.2 (D. Md. July 14, 2015)).

Thus, any argument as to whether or not Harrah's is an "employer" for purposes of the FLSA is not a matter of subject matter jurisdiction and must be raised via a 12(b)(6) motion which Harrah's notably does not make here, instead predicating its motion for dismissal solely on Rules 12(b)(1) and 12(b)(7). *See Maravilla*, 2016 WL 6821090 at *2 n.1 ("if the argument is effectively a Rule 12(b)(6) argument, then it is improperly raised in a Rule 12(b)(1) motion and the Court need not consider it.").

Further, claims of sovereign immunity are not appropriately brought pursuant to Rule 12(b)(1). As another Court in this Circuit observed,

> the court notes that recent Fourth Circuit case law supports the proposition that a motion to dismiss pursuant to Rules 12(b)(1) or

12(b)(6) may not be the appropriate vehicle through which a defendant should assert Eleventh Amendment sovereign immunity. *See United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency,* 745 F.3d 131, 147–48 (4th Cir.2014) (Traxler, C.J., concurring in part and dissenting in part) ("Although this court has not addressed the issue, the circuits that have considered similar assertions of arm-of-state status have uniformly concluded that it is an affirmative defense to be raised and established by the entity claiming to be an arm of the state…. Notwithstanding the cases cited by OCDSNB, the court is convinced that *United States ex. rel. Oberg* offers better guidance as to how the court should adjudicate an Eleventh Amendment inquiry. In this regard, the court finds that outside of the assertion by OCDSNB's counsel that a monetary judgment against it would be paid by state funds, there is insufficient evidence in the record to establish the Immunity Factors requisite to grant OCDSNB sovereign immunity. Based on this lack of evidence, the court is inclined to deny OCDSNB's Motion to Dismiss and allow the parties to engage in discovery on all relevant issues.

*Void v. Orangeburg County Disabilities and Special Needs Bd.*, 2015 WL 404247 at *5 (D.S.C. Jan. 29, 2015).

> ### 2. Harrah's Has Not Raised Arguments That Would Defeat Its Status as Plaintiffs' Employer as That Term is Defined Under the FLSA, Even if Its Motion was (Improperly) Converted to a 12(b)(6) Motion.

Harrah's does not contest the facts in Plaintiff's Amended Complaint that establish Harrah's is Plaintiffs' employer under the FLSA. Instead Harrah's states summarily that EBCI is "his [Plaintiff's] employer". Br. at 7. This statement in turn refers to an affidavit that purports to establish that Plaintiffs had an employment relationship with EBCI. But because whether or not Harrah's is an employer under the FLSA is not a matter of subject matter jurisdiction, Harrah's

cannot look outside the complaint for support. *See, e.g., Lowenthal v. Quicklegal, Inc.,* 2016 WL 5462499 at *5 (N.D. Cal. Sept. 28, 2016) (after rejecting argument that employer status under FLSA is jurisdictional and denying 12(b)(1) motion, court stated that it "therefore construes the defendants' arguments as attacking the merits of [plaintiff's] FLSA claim, and will consider them in the 12(b)(6) context. In doing so, the court considers only the facts [] in the complaint and the documents attached thereto. The court does not consider the defendants many declarations or attachments, which raise factual contentions beyond the scope of a Rule 12(b)(6) motion.") (citations omitted).

Notably Harrah's does not contest or even mention the well-pled allegations of the Amended Complaint establishing that Harrah's was Plaintiffs' employer. *See supra* Roman II Factual Statement. These facts, which must be taken as true even if a 12(b)(6) motion were pending, establish that Harrah's was Plaintiffs' employer under the "economic realities' test" established by the Fourth Circuit which Harrah's neither mentions or discusses. *See Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 83 (4th Cir. 2016) (establishing test to determine who is an FLSA "employer" including whether the individual "(1) has the power to hire and fire the employees, (2) supervise[s] and control[s] employee work schedules or conditions of employment, (3) determine[s] the rate or method of payment, and (4) maintain[s] employment records.").

Finally, Plaintiff ignores that, under the FLSA, Harrah's and EBCI could be Plaintiffs' employers simultaneously. Thus, even if EBCI is Plaintiffs' employer, it would not negate that Harrah's is also Plaintiffs' employer under the FLSA.

### 3. EBCI Is Not the Real Party in Interest Here.

Harrah's does not dispute that it is a statutory "employer" under the FLSA, but it nonetheless argues that it is immune because EBCI is "the real party in interest" here. Harrah's sole assertion is that

> cases establish that the actual employer is the real party in interest when relief is sought pursuant to the FLSA and similar wage and payroll related statutes such as the NCWHA: first, because it is the actual employer that will be responsible for paying any backwages that may ultimately be deemed owed to its employees; and second, it is the actual employer that will be responsible for altering its payroll practices going forward in order to bring them into compliance with the relevant statutes.

[D.E. 54 at 10] But there is no such general rule, and this so-called general rule was not even argued below by Harrah's. Indeed, Harrah's still has not mentioned the five factors courts apply when determining real party in interest, let alone applied them. See *Martin v. Wood*, 772 F.3d 192 (4th Cir. 2014) ("To identify the real, substantial party in interest, we thus examine the *substance* of the claims stated in the complaint, positing inquiries such as: (1) were the allegedly unlawful actions of the state officials 'tied inextricably to their official duties,' (2) if the state officials had authorized the desired relief at the outset, would the burden have been borne by the State; (3) would a judgment against the state officials be

"institutional and official in character," such that it would operate against the State; (4) were the actions of the state officials taken to further personal interests distinct from the State's interests, id.; and (5) were the state officials' actions ultra vires."). Plaintiffs cannot be expected to respond to a perpetually moving target. Plaintiffs maintain these factors do not favor Harrah's here, but Harrah's has not applied the factors so Plaintiffs do not have anything to which to respond. *Compare Void v. Orangeburg County Disabilities and Special Needs Bd.*, 2015 WL 404247 at *3 (D.S.C. Jan. 29, 2015) (citing the factors and stating that "when an instrumentality or agent of the state, named as a defendant in a case, seeks to take advantage of the state's Eleventh Amendment immunity, it becomes necessary to examine the relationship between the state and the entity being sued to determine whether it should be considered an arm of the state.").

Perhaps the only factor that Harrah's comes close to applying is its insinuation that EBCI might somehow ultimately be liable for Plaintiffs' claims as a result of an unidentified pass through. But the Supreme Court recently rejected such ultimate financial responsibility, even if proven which it has not been proven here, as sufficient to meet the real party in interest standards. At best, Harrah's claim is that it was acting at the behest of, and in the interest of, EBCI an in effect is seeking an application of a form of reverse respondeat superior. In *Lewis v. Clarke*, 137 S.Ct. 1285 (2017) the Supreme Court refused to find the Tribe as the

real party in interest to a lawsuit "against a tribal employee operating a vehicle within the scope of his employment but on state lands" even though the Tribe's Gaming Authority was "required by Mohegan Tribe Code § 4–52 to indemnify Clarke for any adverse judgment" because "an indemnification provision cannot, as a matter of law, extend sovereign immunity to individual employees who would otherwise not fall under its protective cloak." *Id.* at 1292. Yet that is all that Harrah's offers to this Court.

Harrah's also ignores the crucial "distinction between individual- and official-capacity suits" which is that "in an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself. This is why, when officials sued in their official capacities leave office, their successors automatically assume their role in the litigation. The real party in interest is the government entity, not the named official. "Personal-capacity suits, on the other hand, seek to impose *individual* liability upon a government officer for actions taken under color of state law.'" *Lewis*, 137 S.Ct. at 1291 (quoting *Hafer v. Melo*, 502 U.S. 21 , 25 (1991)). Here, there is no indication in the record that, were Harrah's to be replaced in its role as managing the casino, that its successor manager would "automatically assume their role in the litigation." In fact, there is every reason to believe this is not the case. Accordingly, Harrah's, had it been managing a state-owned casino, would not be

entitled to the State's sovereign immunity. The Supreme Court has made clear that the "there is no reason to depart from these general rules [governing immunity of state officials sued in their personal capacity] in the context of tribal sovereign immunity." *Id.* at 1291. See also *Pennachietti v. Mansfield*, 2017 WL 6311646 (E.D.Pa. December 11, 2017).

It is noteworthy, however, that all of the cases cited by Harrah's as favoring its position involve suits against public officials in their individual capacities, and the courts there found that such efforts were thinly veiled attempts to avoid sovereign immunity. *See e.g., Montgomery v. Maryland*, 266 F.3d 334, 340 (4th Cir. 2001) ("this court has recently held in *Lizzi* that the state is the real party in interest when an official is sued for damages for official acts under the FMLA."). This is a very important distinction because the state employee is merely a follower or implementer of state policy, whereas here the complaint establishes that Harrah's has complete discretion to set employment policy and to implement it. This is a crucially important difference.

In the proceedings before the Magistrate, Harrah's did not even mention real party in interest in connection with claims against it, let alone mention or apply the factors required to invoke this doctrine. The Magistrate was correct to deny Harrah's motion below on this basis, and this Court should adopt that conclusion.

**B.    The Tribal Exhaustion Doctrine Is Inapplicable to Plaintiff's FLSA and NCWHA Claims**

Harrah's also argues that the R&R errs by not dismissing this case because Plaintiffs have not exhausted unspecified tribal court remedies, primarily relying on *Montana v. U.S.*, 450 U.S. 544 (1981) as its support.  The R&R did not reach this issue, but the claim of tribal exhaustion is not applicable to this case.

Indeed, given the case law, it is remarkable that Harrah's, and not the EBCI, is arguing that Plaintiffs must pursue their claims in a tribal court.  But Harrah's cites to no contract which would require such exhaustion here, which renders *Montana* inapplicable.  Nor is there a currently pending Tribal Court action in which steps to exhaust remain, nor has the tribal court attempted to insert itself into this action for purposes of asserting its jurisdiction.  Harrah's failure to note the standard that governs the tribal exhaustion doctrine requires ejection of Harrah's claim.

**1.    There is No Pending Tribal Action and There is No Evidence Plaintiffs Would be Able to Pursue a Tribal Action as the Tribal Courts Do Not Have Jurisdiction to Enforce the FLSA.**

Harrah's does not argue that there is an existing Tribal Court action involving the same or similar facts.  This case is thus different from the vast majority of the authority addressing tribal exhaustion, which presupposes that a party has come to the federal court without completing tribal remedies.  The Supreme Court has made clear that because "the federal policy of promoting tribal self-government encompasses the development of the entire tribal court system ...

exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts." *Iowa Mutual Insurance Co. v. LaPlante,* 480 U.S. 9, 16-17 (1987). See also Tidwell v. Harrah's Kansas Casino Corp., 322 F. Supp.2d 1200, 1204 (D. Kan. 2004) (distinguishing tribal exhaustion authority urged by the Harrah's LLC in that case because "[i]n both cases there was a pending tribal suit").

## 2. Tribal Exhaustion is Rarely Warranted Where the Tribe Has Not Intervened to Assert the Jurisdiction of its Courts.

Further distancing this case from the vast majority of tribal exhaustion cases is the fact that, invariably, the tribal court is a party to virtually all tribal exhaustion decisions and there is an already instituted tribal proceeding that is the issue of the exhaustion discussion in the federal court. Here, the tribe is not a party, nor has it sought to intervene to invoke the jurisdiction of its courts, nor is there a pending uncompleted tribal court proceeding. *Compare Ninigret Dev. Corp. v. Naragansett Indian Wetuomuck Housing Auth.*, 207 F.3d 21, 31-31 (1st Cir. 2000) ("To be sure, the tribal exhaustion doctrine does not apply mechanistically to every claim brought by or against an Indian tribe….as a general rule, if a tribe has not explicitly waived exhaustion, courts lack discretion to relieve its litigation adversary of the duty of exhausting tribal remedies before proceeding in a federal forum"). The

doctrine does not apply.[4]

### 3. Non-Members Are Not Subject to the Tribal Exhaustion Doctrine.

As the Supreme Court in *Montana* noted, "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe" although a "tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe [] through commercial dealing, contracts, leases, or other arrangements." *Id.* at 565.

The Plaintiffs in this case are not EBCI members and the Defendants are not tribal entities. These facts doom Harrah's tribal exhaustion argument. *See Tidwell*, 322 F.Supp.2d at 1204 ("The Court finds it difficult to discern what

---

[4] Harrah's cites *Madewell v. Harrah's Cherokee Smokey Mountains Casino*, 730 F. Supp.2d 485 (W.D.N.C. 2010), but it is clearly distinguishable. First, Harrah's ignores that the Plaintiff in *Madewell* had sued the tribal casino itself, which is a radically different circumstance than exists here. Second, the nature of the lawsuit in *Madewell* was a personal injury claim, which is significantly different than the FLSA claims at issue here. Third, the Plaintiff in *Madewell* "did not file a response to the Defendants' motion" which means that the Court was denied any countervailing arguments. Finally, the *Madewell* Court did not apply the *Montana* factors at all – a failing that is probably almost directly attributable to the plaintiff having failed to file a response brief. As concerns the Madewell court's statement that "the exhaustion rule is applicable regardless of whether an action is currently pending in tribal court", the conclusion is based a flimsy assertion made by the Tenth Circuit in *U.S. v. Tsosie*, 92 F.3d 1037, 1041 (10th Cir. 1996) where the Court cited to a 1933 decision involving state/federal abstention. There is no other authority cited for this proposition which preceded the recognition of the tribal exhaustion doctrine by several decades. There is no rationale that supports such a proposition, and the absence of the tribe as a party asserting such resort to tribal courts in the first instance is a telling difference.

sovereignty concerns are threatened by plaintiff's suit. Her suit is between two non-Indian entities and plainly involves issues of federal law. The only connection with the tribe is the casino's location on the reservation. Nevertheless, Harrah's suggests that adjudication of plaintiff's suit jeopardizes tribal sovereignty."); *Myrick v. Devils Lake Sioux Manufacturing Corp.,* 718 F. Supp 753, 755 (D.N.D. 1989) (court declined to apply the tribal exhaustion doctrine to a Title VII age discrimination case brought by a tribal member because because there was no challenge to the jurisdiction of the tribal court, the tribe was not a party, and the case presented issues of federal law); *Vance v. Boyd Mississippi, Inc.,* 923 F.Supp. 905, (S.D.Miss. 1996) (nontribal employee suing its non-tribal company employer for Title VII violations not required to exhaust because the case involved a dispute between two non-Indians concerning issues of federal law, the employee was not challenging a tribal ordinance or its applicability to her situation, and there was no pending tribal court proceeding or attack on the jurisdiction of the tribal court).

Notably, there is no evidence here that the Tribe caused Harrah's, to whom it delegated the right to establish employment policies and to hire and fire, to require employees to sign a policy agreeing to use tribal courts to resolve any employment dispute as a condition of employment. The Tribe eschewed such a contractual term, for whatever reason, and now Harrah's, and not the Tribe, is trying to force Plaintiffs into Tribal Court. This is inconsistent with the language of *Montana* as

the Supreme Court later made clear in *Nevada v. Hicks,* 533 U.S. 353 (2001), clarifying that "[t]he *Montana* Court ... was referring to private individuals who voluntarily submitted themselves to tribal regulatory jurisdiction by the arrangements that they (or their employers) entered into." *Id.* at 358. There are no such "arrangements" here. *Compare Solis v. Matheson*, 563 F.3d 425, 436 (9th Cir. 2009) ("As was the case in *Montana,* here also, '[n]o such circumstances ... are involved in this case.' First, there is no evidence that the Puyallup Tribe asserted regulatory authority over employment and wages for non-Indians….Second, there is no evidence that the non-Indians employed at Baby Zack's entered into any agreements or dealings with the Puyallup Tribe that would subject the non-Indians to tribal civil jurisdiction. Finally, the Mathesons have not alleged that requiring payment of time and a half for overtime imperils the welfare of the Tribe. We, therefore, conclude that the *Montana* holding is inapplicable to the instant case.")

Tellingly, the EBCI and Harrah's, in the compact cited throughout Plaintiffs' amended complaint, specifically contracted that the parties may "commence an action in the Federal District Court for the Western District of North Carolina for the purposes of seeking a declaration of the rights of the parties under this Agreement." Section 20.2. Harrah's would nonetheless have the Plaintiffs here pursue a declaration of their rights in the tribal courts which even Harrah's itself would not have to do.

Further, Harrah's has failed to cite a single case where a non-tribal entity can successfully force a non-tribal plaintiff into a tribal court in a case in which the tribe was not in any way a party. To the contrary, "[t]he burden rests on ***the tribe*** to establish one of the exceptions to *Montana's* general rule that would allow an extension of tribal authority to regulate nonmembers on non-Indian fee land. These exceptions are 'limited' ones, and cannot be construed in a manner that would 'swallow the rule,' or 'severely shrink' it." *Plains Commerce Bank v. Long Family Land and Cattle Co.*, 554 U.S. 316, 330 (2008) (quoting *Atkinson Trading Co. v. Shirley*, 532 U.S. 645, 654 and 659 (2001) (emphasis added). The burden has been squarely placed by the Supreme Court on "the Tribe" to prove need for exhaustion, yet the Tribe is not a party seeking the jurisdiction of its courts here – the party seeking to invoke the jurisdiction of the tribal court is a private non-Indian corporation which itself is able to resort to the federal courts in any dispute with the Tribe.

### 4. There is No Evidence That There is A Tribal Forum For Plaintiffs' Claims.

Finally, Harrah's does not even discuss the availability of a tribal forum for this dispute. Harrah's does not argue that the Tribal Court recognizes Plaintiffs' causes of action, that the Tribal Court would exercise jurisdiction over Plaintiffs, etc. Harrah's incorrectly asserts that Plaintiff is required to exhaust his remedies in the EBCI tribal court before asking this Court for relief. Harrah's is incorrect. The

"tribal exhaustion doctrine" is applied by federal courts as a matter of comity and respect for tribal self-government. *Strate v. A-1 Contractors*, 520 U.S. 438, 451-53 (1997). The tribal exhaustion doctrine is not jurisdictional.

## IV. CONCLUSION

For the reasons stated above, the Court should deny Harrah's Motion to Dismiss.

/s/ Philip J. Gibbons, Jr.
Philip J. Gibbons, Jr., NCSB #50276
**PHIL GIBBONS LAW, P.C.**
15720 Brixham Hill Avenue Suite 331
Charlotte, NC 28277
Email: phil@philgibbonslaw.com

James B. Zouras
**STEPHAN ZOURAS, LLP**
205 N. Michigan Avenue, Suite 2560
Chicago, IL 60601
Email: Jzouras@stephanzouras.com

Jeffrey A. Leon
**QUANTUM LEGAL, LLC**
513 Central Avenue, Suite 300
Highland Park, IL 60035
Email: Jeff@QULegal.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

This is to certify that on May 25, 2018 a copy of the foregoing has been filed with the Clerk of the Court using the CM/ECF system which will send notification to the following:

Jennifer T. Williams
jtwilliams@cozen.com

Patrick McQuillan Aul
paul@cozen.com

Susan N. Eisenberg
seisenberg@cozen.com

Tracy L. Eggleston
teggleston@cozen.com

/s/ Philip J. Gibbons, Jr.
Philip J. Gibbons, Jr., NCSB #50276